ARIOSTO HARRUP, administrator *de bonis non* of THOMAS M. HARRUP, *et al.*, plaintiffs in error, *vs.* SARAH WINSLET, *et al.*, defendants in error.

A testator, by his will, appointed J. M. H. as his executor, and devised to him certain real estate forever, provided he would support certain female members of testator's family; and, subsequently, the executor was removed, and an administrator, with the will annexed, appointed in his stead. Upon a bill filed by the *cestui que trust*, alleging that the administrator failed to support them according to the terms of the will, and alleging, also, that the administrator, and his sureties on his administration bond were insolvent, the Court appointed a Receiver to take charge of the estate:

*Held*, that the Court erred.

Equity. Appointment of Receiver. By Judge SPEER. Monroe County. Chambers. November, 1867.

Sarah Winslet, in her own behalf, and as *prochein ami* of her mother, Martha Ward, a lunatic, filed her bill in Equity, in substance as follows: Thomas M. Harrup, the grand-father of said Sarah and said Martha, on the 5th day of January, 1855, made and executed his last will, in the words following:

*"State of Georgia, Monroe County:*

" In the fear of God, Amen! I, Thomas M. Harrup, being of sound and disposing mind, revoking all others, make this my last will and testament. * * * * * * * * * It is my will and desire that, for divers good reasons, and especially the peculiar and helpless (condition) of my female family, I make and constitute my son, John M. Harrup, my

executor, to carry out my will; and further, I give to said John M. Harrup all the tract of land on which I now live, forever, and the control of all the profits arising from the negroes belonging to me, provided that he, the said John M. Harrup, shall well provide for, decently maintain, and protect my beloved wife, Sarah, my beloved grand-daughter, Sarah Winslet, and my beloved daughters, Martha and Laduska, until the death of my wife and daughters, Martha and Laduska, at which time all my negroes, with their natural increase, except my negro girl Juda, and her increase, shall be equally divided between all my children, except John M. Harrup, he has no interest further in my negroes.

"The negro girl Juda, above excepted, shall go to, and be the property of Sarah Winslet, forever. And furthermore, I will and bequeath to my son, John M. Harrup, for the use of the family, all my perishable property, including my household. In testimony whereof," etc.

Testator died. Said John M. Harrup proved the will, and qualified as executor, and soon after, to-wit, in 1855, his letters were revoked. In May, 1856, Ariosto Harrup took out letters of administration *de bonis non*, on said estate, and as such, took possession of the property, real and personal, of the value of $5,000 00. When the will was made, Martha had lost her reason, said Sarah and Laduska were physically and mentally helpless, and testator's wife was, and had been for a year, helpless. Flemming Harrup, then forty years old, and John M. Harrup, then forty-five years old, lived with their father, the testator. Testator's wife survived him only about a month, and Laduska died in 1858. When testator died, he left eight or nine bales of cotton, worth $500 00, which neither John M., as executor, nor Ariosto, as administrator *de bonis non*, had ever had appraised. From the time Ariosto took possession till the slaves were freed, he made yearly crops on this farm, (being two hundred and two and a half acres in said county,) of the annual value of, say $500 00, and since the slaves were free, of the annual value of, say $300 00; he sold large portions of said crops, and also Lucy, a negro, belonging to the estate, getting for

her $450 00, or $500 00, and made no returns of the same to the Court of Ordinary.

All this property they averred was chargeable with their support, but they did not get a support from it. On the contrary, John M. Harrup, in 1855, moved from Monroe county to Putnam county, Georgia, and has never been back except for a single night, about twelve years ago, and has made no provision or arrangement for their support. Ariosto, although knowing all this, has not furnished them with what they needed, and Sarah has had to work to furnish herself and her lunatic mother with clothing, etc., said Martha being sixty years old, and unable to support herself.

Ever since testator's death, complainants and Ariosto and Flemming have lived together in the old homestead, and lived on the proceeds of said farm, and Sarah has supplied bedding, clothing, etc., for the family by her own labor. Of late years, Ariosto has permitted his brothers, Flemming and Peyton, to cultivate the farm, and pay no rent except to divide the crops with him. This arrangement did not leave a sufficiency to support complainants.

Ariosto made no return as administrator since 1857. He often told Sarah that the said will was set aside, and that neither she nor her mother had any right to a support and maintenance out of said estate. But, in 1866, they discovered that this was untrue, and Ariosto threatens now to sell the land, and leave complainants. They aver that he has permitted said brothers to take away certain furniture from the house, and certain portions of the crops, etc., which of right belonged to said estate.

Flemming and Peyton, are the securities on Ariosto's bond, and all three are insolvent, and John M. Harrup is insolvent, and has either abandoned or conveyed to Ariosto and Flemming his interest in said estate, and none of them are supporting complainants, as in duty they are, by said will, bound to do. They prayed that Ariosto be restrained from selling the land, or any part of that year's crop, or other personalty on the farm; that a Receiver be appointed; to

43

take charge of the same, and out of it support them, and for a decree fixing their rights in the premises, etc.

· The Chancellor granted the injunction as prayed for, and ordered Ariosto to show cause why a Receiver should not be appointed. ·

No answer or other pleadings appear. The Chancellor examined witnesses who testified that Ariosto and Flemming lived with oratrixes, and Peyton and his family lived near by, and all worked this farm jointly. It appeared that Ariosto's and Flemming's parts were used for their household, including complainant's, but complainants said they did not get a proper support, and evidence *pro* and *con* on this point was heard. Ariosto, as a witness, gave a history of his conduct in the premises, stating, in substance, that he had advanced money to pay the debts of the estate, that there was one debt not yet paid, that he had bought mules, etc., to supply the farm, and had done all he thought he ought to do, under the circumstances, but denied the right of said Sarah to the support claimed.

The Chancellor appointed a Receiver, and ordered him to take possession of said property for the purposes aforesaid. Of all this John M. Harrup had no notice.

The defendant, Ariosto, excepted, and assigned that the Court erred, because complainants, under said will, had no interest in said land, that their only interest was in the profits of the labor of the slaves now freed, and they had no right to the crops raised as aforesaid, and in appointing a Receiver, John M. Harrup not having had notice, and in failing to require the Receiver to give security, and because the appointment of said Receiver was contrary to law, etc., etc.

.Before the argument in the Supreme Court, the objection that John M. had not been served was withdrawn by counsel for plaintiffs in error, under a consent arrangement.

A. D. HAMMOND, PINCKARD, (by the Reporter,) for plaintiffs in error.

R. P. TRIPPE, (by C. W. DuBose,) for defendants in error.

WALKER, J.

The injunction granted in this case was not excepted to. The question is, did the Court exercise a prudent discretion in taking possession of this tract of worn-out land, in bad repair as a farm, and turning the administrator out? We think not. While it perhaps is true that the farm is not as well managed as it might be, still we think the facts do not make such a case as to require the Court of Chancery to seize, into its own possession, this property, and disposses the administrator of it. That Chancery has this power there can be no question. Rev. Code, sec. 3,092 . Johns vs. Johns, 23 Geo. R., 35; Walker & Bradford vs. Morris, 14 Geo. R., 326. In Johns vs. Johns, this Court says: " In regard to the question of jurisdiction raised by the exceptions, it may be remarked that executors are trustees, and as such, are amenable to a Court of Chancery for the faithful execution of their trusts. That Court here, exercises, in such cases, a concurrent jurisdiction with the Ordinary, as it does in England with the Spiritual Court. Middleton vs. Dowell, 13 Vez., Jr., 268. The Ordinary has power to compel an executor to give bond with approved security, for the faithful execution of his trust, when it is made to appear to him, that the executor is in insolvent circumstances, and that the estate is likely to be wasted by his improper conduct. Cobb, 314. The Judge of the Superior Court has the like power, on application of any devisee, legatee, or creditor, who shall establish a charge of neglect or malpractice against such executor. Cobb, 307. The executor may be superseded or dismissed, if he fails to give such security. Cobb, 307. The same matters are within the ordinary jurisdiction of a Court of Chancery. In Walker vs. Morris, *supra,* the Court says it is a proposition which none will dispute, that an administration can be wrested from the hands of the legal representative, who is wasting and mismanaging the estate, and placed in the hands of a Receiver. In general, the application, to secure the rights of parties against the mismanagement of fiduciaries appointed by the Court of Or-

dinary, should be made to that Court, and it is only in extra-ordinary circumstances that equity will interfere. Revised Code, sec. 3092. A Receiver should be appointed to take the assets of an estate out of the hands of the legally appointed representative, only in case of manifest danger of loss, or destruction, or material injury to such assets. While there is no question, as to the power of a Court of Chancery, upon a proper case made, to appoint a Receiver, to take the property of an estate, out of the hands of an administrator, still, we think, in this case, the power was improperly exercised; and the order, appointing a Receiver, is reversed. Upon this preliminary motion, we deem it improper to determine the respective rights of the parties, under the will of Thomas M. Harrup. When John M. Harrup shall be before the Court, with the other parties, the whole matter can properly be considered, and decided by the Court.

Judgment reversed.